Approved: _____
           MATTHEW WEINBERG
           Assistant United States Attorney

Before:   HONORABLE STEWART D. AARON
           United States Magistrate Judge
           Southern District of New York

**22 MAG 5371**

- - - - - - - - - - - - - - - - - x
                             :    **SEALED COMPLAINT**

UNITED STATES OF AMERICA       :
                             :    Violation of
       - v. -                     :    18 U.S.C. § 1343,
                             :    and 2
KONRAD BICHER,               :
                             :    COUNTY OF OFFENSE:
          Defendant.      :    NEW YORK
                             :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    Zachary Effting, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
(Wire Fraud)

    1.   From at least in or about February 2019, up to and including at least April 2022, in the Southern District of New York and elsewhere, KONRAD BICHER, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, BICHER entered into lease agreements (the "Lease Agreements") to rent various apartment units (the "Units") in Manhattan with the intent to violate the terms of the Lease Agreements, including by failing to make required monthly rental payments and by renting the Units to third parties on a short-term basis, including through

1

posting the Units for rent on at least two online marketplaces for short-term rentals ("Online Marketplace-1" and "Online Marketplace-2," collectively the "Online Marketplaces").

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Special Agent with the FBI. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with landlords and property managers who have entered into and/or managed lease agreements with KONRAD BICHER, the defendant, other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

OVERVIEW OF RENTAL PROPERTY SCHEME

3. As set forth in further detail below, based on my involvement in this investigation, I have learned the following:

a. Beginning in or about February 2019, KONRAD BICHER, the defendant, and/or individuals working in concert with BICHER, entered into at least 18 Lease Agreements for Units in Manhattan.

b. The Lease Agreements required the lessee to make monthly rental payments. The Lease Agreements also either included clauses that prohibited the lessee from renting the Units to third parties on a short-term basis and/or clauses that prohibited the lessee from subletting the Units to third parties without written consent of the owner.

c. Despite the requirement to make monthly rental payments, KONRAD BICHER, the defendant, failed to make payments as required by the Lease Agreements. For many of the Units, BICHER also refused to vacate the Units after the expiration of the Lease Agreements. During the period of time that BICHER failed to make required rental payments, including the period of time after a Lease Agreement expired and the premises had not

2

been vacated, BICHER derived income by renting the Units on a short-term basis, including by posting the Units for rent on the Online Marketplaces.

        d.   Between in or about at least July 2019 and in or about at least April 2022, KONRAD BICHER, the defendant, and his associates, failed to pay more than $1,000,000 in payments pursuant to the Lease Agreements or, for the period of time after the expiration of the Lease Agreements, based on an estimated fair market value for the Units.  During this period, BICHER caused the Units to be listed for short-term rent on Online Marketplace-1 and/or Online Marketplace-2, resulting in at least $1,170,000 million in rental income to BICHER and/or his associates.

<u>BICHER ENTERS INTO AND/OR CONTROLS AT LEAST 18 LEASE AGREEMENTS FOR UNITS LOCATED IN MANHATTAN</u>

    4.   Based on my communications with at least eight landlords and property managers of residential apartment buildings in Manhattan (the "Building Managers") and my review of documents provided by the Building Managers, I know the following:

        a.   Between in or about at least April 2019 and in or about April 2020, the Building Managers collectively entered into at least nine Lease Agreements in which KONRAD BICHER, the defendant, was the lessee (the "Bicher Individual Lease Agreements").

        b.   In or about January 2020, one of the Building Managers entered into a Lease Agreement in which the lessee was identified as a particular company ("Company-1") and was signed by BICHER as a "member" of Company-1 (collectively with the Bicher Individual Lease Agreements, the "Bicher Lease Agreements").

        c.   Between at least in or about June 2019 and in or about November 2019, the Building Managers collectively entered into at least eight Lease Agreements with individuals other than BICHER, but whom, for the reasons described *infra* at paragraphs 5-6, the Building Managers understand were affiliated with BICHER (the "Bicher-Affiliated Lease Agreements").

        d.   Each of the Lease Agreements required the lessees to make monthly rental payments.  The aggregate monthly rental

3

payments pursuant to the Lease Agreements was approximately $66,000.

  e. Each of the Lease Agreements had a clause which prohibited the lessee from renting the Units on a short-term basis – consistent with New York City laws which generally prohibit rentals in apartment buildings of under 30 days – and/or a clause prohibiting the lessee from subletting the Unit without written consent of the Unit's owner.

  f. For each Unit rented pursuant to the Lease Agreements, at some point after entering into the Lease Agreement, BICHER and/or the lessee affiliated with BICHER ceased making the required monthly rental payments for the Unit. For at least 15 Units, BICHER and/or the lessee affiliated with BICHER also failed to vacate the Unit at the expiration of the term of the Lease Agreement.

  g. The last time that BICHER and/or the lessee affiliated with BICHER made a rent payment pursuant to any of the Lease Agreements was in or about November 2020.

  h. As of April 2022, BICHER and/or the lessee affiliated with BICHER owed over $1,000,000 in rental payments, either pursuant to the terms of the Lease Agreements or based on an estimated fair monthly value of the property for the continued use of the Unit after the term of the Lease Agreement.

  i. During the time period that BICHER and/or the lessees affiliated with BICHER failed to make rental payments pursuant to the Lease Agreements, the Building Managers made numerous efforts to remove BICHER from the Unit and/or to obtain monthly rental payments. For example:

   i. On or about June 29, 2020, one of the Building Managers for a Unit ("Unit-1") leased pursuant to a Bicher Individual Lease Agreement sent BICHER a notice that it intended to terminate the lease for the Unit ("Unit-1"). BICHER had not paid rent for Unit-1 since in or about November 2019. Thereafter, on or about March 29, 2021, legal counsel for the Building Manager sent BICHER a letter stating that BICHER owed $40,800 in rent payments and income in connection with Unit-1.

   ii. On or about October 23, 2020, another Building Manager for a Unit ("Unit-2") leased pursuant to a Bicher Individual Lease Agreement sent BICHER and another individual who signed the lease ("Individual-1") a notice that

4

it intended not to renew the lease for the Unit. BICHER and Individual-1 had not paid rent for Unit-2 since in or about March 2020. Thereafter, on or about February 23, 2022, legal counsel for the Building Manager filed a Holdover Petition in Civil Court of the City of New York seeking an order that BICHER and Individual-1 return Unit-2 to the Building Manager and that BICHER and Individual-1 be required to pay, among other things, (a) $27,900 in rent owed pursuant to the Lease Agreement, which expired on or about December 31, 2020, and (b) a money judgment for the use and occupation of Unit-2 beyond the expiration of the Lease Agreement, estimated at approximately $3,300 per month.

5. Based on my review of records from the Online Marketplaces and banks, I know that each of the Units rented pursuant to the Lease Agreements, including the Bicher-Affiliated Lease Agreements, were posted for rent by user accounts on Online Marketplace-1 and/or Online Marketplace-2 which, for the reasons described *infra* paragraphs 10-14, I understand to be affiliated with KONRAD BICHER, the defendant.

6. In addition, based on my review of materials provided by the Building Managers, I know that KONRAD BICHER, the defendant, appears to be affiliated with the individuals who signed as the lessee for each of the eight Units rented pursuant to the Bicher-Affiliated Lease Agreements. Specifically:

   a. The lessee for one of the Bicher-Affiliated Lease Agreements is Individual-1, that is, the same individual who co-signed one of the Bicher Individual Lease Agreements, specifically the Lease Agreement for Unit-1, as described *supra* paragraph 4.i.ii.

   b. The lessee for four of the Bicher-Affiliated Lease Agreements was another individual ("Individual-2"). On or about May 19, 2019, Individual-2 entered into one of the Bicher-Affiliated Lease Agreements for a particular unit ("Unit-3"). On or about August 1, 2019, the Lease Agreement for Unit-3 was amended to add an individual with the last name "Bicher" (but a first name other than "Konrad") to the Lease Agreement as a lessee. A credit card authorization form signed on July 30, 2019 provided a credit card held in the name of "Konrad Bicher" as a means of payment for the individual with the last name "Bicher." In addition, on or about August 5, 2021, in response to an email from a Building Manager in which the Building Manager noted that the contact phone number for the lease belonged to BICHER, rather than Individual-2, and noted that

5

BICHER, who was not the lessee, had asked the front desk to provide copies of keys to guests of the Unit, Individual-2 replied that "Konrad is my husband and we have access to [the] same number."[1]

        c.    The lessee for two of the Bicher-Affiliated Lease Agreements was another individual ("Individual-3"). On or about July 10, 2019, Individual-3 signed one of the Bicher-Affiliated Lease Agreements for a particular unit ("Unit-4"). In or about April 2020, the landlord for Unit-4 sought to contact Individual-3 with respect to a check for rental payments for Unit-4 which had bounced. Thereafter, on or about May 4, 2020, the landlord received an email from "Konrad Bicher" at the email address "bichermanagement" at a particular email service provider, which stated: "To whom this may concern, [Individual-3] is not the tenant living in the unit, I am Conrad Bicher [sic]. As advised by my lawyer I should wait to pay rent until pandemic is over." The email was signed "Conrad." Thereafter, litigation was initiated in connection with the use of Unit-4. In connection with that litigation, on or about July 29, 2020, Individual-3 filed an affidavit which stated, among other things, that Individual-3 "den[ies] ever taking possession" of Unit-4" that the "only person(s) having possession and/or a legal right to [Unit-4] during all relevant period was/were Konrad Bicher and/or Mr. Bicher's licensees, etc.," and that "Konrad Bicher" was Individual-3's "business associate."

        d.    The lessee for the remaining Bicher-Affiliated Lease Agreement was an individual with the last name "Bicher." The first name of the lessee was not "Konrad," but the Unit subject to this Lease Agreement is in the same building as two other Units which were leased by BICHER pursuant to two of the Bicher Individual Lease Agreements.

    7.    Based on my training and experience, and for the reasons set forth in paragraphs 5 and 6 *supra*, I therefore believe that each of the individuals who signed a Bicher-Affiliated Lease Agreement is associated with KONRAD BICHER, the defendant, and that the Bicher-Affiliated Lease Agreements were, in fact, controlled and/or held by BICHER.

---

[1] Based on public records searches, I am aware of no information indicating that BICHER and Individual-2 are, in fact, married.

### BICHER RENTS UNITS ON A SHORT-TERM BASIS ON THE ONLINE MARKETPLACES, IN VIOLATION OF THE LEASE AGREEMENTS

8. Based on my review of publicly available information disseminated by Online Marketplace-1, I understand that Online Marketplace-1 is an online marketplace which allows individuals and/or entities, referred to as "Hosts," to list and advertise their real estate properties for rent. Properties rented through Online Marketplace-1 are typically rented for at least one night, but may be rented for longer periods of time. Individuals interested in renting properties on a short-term basis can review information about properties and book and pay for properties through Online Marketplace-1. The Host then receives the rental payments for the property from Online Marketplace-1.

9. Based on my review of publicly available information disseminated by Online Marketplace-2, I understand that Online Marketplace-2 is an online marketplace which allows individuals and/or entities to list and advertise their real estate properties for rent. Unlike Online Marketplace-1, through which individuals offer properties for overnight stays, properties listed for rent on Online Marketplace-2 are typically advertised for specific events, such as meetings and/or video productions. Online Marketplace-2 does not allow renters to reserve properties for overnight stays. After booking a property on Online Marketplace-2, the renter makes payment through Online Marketplace-2.

10. Based on my review of records from Online Marketplace-1, I know that there are at least 30 user accounts which rented the Units and received revenues from those rentals through Online Marketplace-1. Those user accounts (the "Online Marketplace-1 User Accounts") sent money received for rental payments for the Units to at least 33 different accounts at eight different banks and/or online payment processing companies (the "Accounts").

11. Based on my review of records from the Banks, I know that at least 11 of the Accounts were held in the name of KONRAD BICHER, the defendant, or in the name of companies for which BICHER was the signatory of the Account (the "Bicher Accounts"). For at least three of the Accounts, a particular phone number was identified as the contact number for the Account. Based on my review of records from a cellphone service provider, I know that phone number is subscribed to by "Konrad Bicher" (the "Bicher Phone Number"). Based on my communications with the

7

Building Managers, I know that at least two of the Building Managers responsible for at least eight of the Lease Agreements have contacted BICHER through the Bicher Phone Number.

12. Based on my review of records from Online Marketplace-1 and the Bicher Accounts, I know that the Online Marketplace-1 User Accounts received at least $1,172,576.12 in income from posting the Units for rent. Of that $1,172,576.12, at least $436,100.59 was sent to the Bicher Accounts.

13. Based on my review of records from Online Marketplace-2, I know the following:

    a. Unit-3 was advertised for rent by a particular user account on Online Marketplace-2 (the "Online Marketplace-2 Account"). The Lease Agreement for Unit-3 included a provision prohibiting the lessee from renting the Unit to third parties on a short-term basis.

    b. The Online Marketplace-2 Account is held in the name of "Konrad Bicher." The Bicher Phone Number is listed as the phone number for the Online Marketplace-2 Account and, on at least 30 occasions, the Online Marketplace-2 Account instructed prospective renters to contact the Bicher Phone Number to discuss arrangements for the rental.

14. Based on my review of records from Online Marketplace-2 and the Accounts, I know that the address associated with the Online Marketplace-2 Account is an address which was submitted in connection with the opening of a credit card in the name of "Konrad Aaron Bicher" at a particular bank ("Bank-1").

15. Based on information obtained from Online Marketplace-2, I know that the electronic servers utilized by Online Marketplace-2 are not located in the state of New York. Furthermore, based on my review of records from Online Marketplace-2 and records from Bank-1, I understand that, on or about March 11, 2020, KONRAD BICHER, the defendant, opened a Bank Account at Bank-1 in the name of a particular company, and signed the account opening documents as "Member" of the company at a branch of Bank-1 located in Manhattan. On that same day, BICHER communicated with prospective renters of Unit-3 through Online Marketplace-2's internal messaging platform.

16. On or about March 21, 2022, the Building Manager for Unit-3 sued KONRAD BICHER, the defendant, Individual-2, and the

8

other individual with the last name "Bicher" who was added to the Lease Agreement for Unit-3 in the Supreme Court of the State of New York. On that same day, there were multiple news articles published about an individual named "Konrad Bicher" who rented apartment units in New York City, failed to make necessary rental payments for those units, and made money by renting those units on Online Marketplace-1. Those articles included photographs of KONRAD BICHER, the defendant, and quotes attributed to BICHER. Based on my review of records from Online Marketplace-2, I know that, on or about March 21, 2022, that is, on or about the same day that the lawsuit was initiated and the news articles were published, an individual using the name "Konrad" contacted Online Marketplace-2 and requested that the Online Marketplace-2 Account be deleted.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of KONRAD BICHER, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

    /s/ Zachary Effting, with permission by SDA
    Special Agent Zachary Effting
    Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1 this 27th day of June, 2022

_____
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK